Jesse Garfield **PATTON**, Appellant,

v.

**STATE OF NORTH CAROLINA,**
Appellee.

No. 8763.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 17, 1963.

Decided March 25, 1963.

Claude F. Seila, Lenoir, N. C. (Court-assigned counsel), for appellant.

James F. Bullock, Asst. Atty. Gen. of North Carolina (T. W. Bruton, Atty. Gen. of North Carolina, on brief), for appellee.

Before BOREMAN and J. SPENCER BELL, Circuit Judges, and CRAVEN, District Judge.

BOREMAN, Circuit Judge.

This is an appeal by Jesse Garfield Patton from an order of the District Court of the United States for the Middle District of North Carolina denying, without a hearing, his petition for a writ of habeas corpus. Patton's principal contention is that he was denied due process of law when forced to stand trial upon the charge of armed robbery without the assistance of counsel in the Superior Court of Caldwell County, North Carolina.

Patton was initially indicted at the December 1958 term of the Superior Court of Caldwell County for the offense of larceny from the person. Prior to the November 1959 term, when the trial on this indictment was originally scheduled, counsel had been employed by one of Patton's relatives. This attorney had conferred with his client and had talked with the solicitor and the sheriff with regard to the state's evidence but had not contacted or interviewed two persons who, according to Patton, could testify in support of his asserted alibi. Before the case was called for trial, defense counsel apparently became convinced that Patton could be convicted of armed robbery, an offense carrying a more severe

penalty than larceny from the person, and advised his client to plead guilty to the pending indictment. Patton protested his innocence and refused to so plead. When the case was called for trial, the judge directed that the case be continued to the next term to afford opportunity to the solicitor to obtain another indictment against Patton charging him with armed robbery. The record does not disclose the nature or source of the judge's information which prompted the direction to the solicitor to obtain a second indictment.

At the February 1960 term, the grand jury returned an indictment against Patton for armed robbery and the case was called for trial on that indictment on March 8, 1960. Patton was at that time in state custody and was serving a sentence for another offense. When he and his counsel again conferred, they were still in disagreement. Counsel was of the opinion that a plea of guilty to larceny from the person would be accepted by the state and would terminate the prosecution. Patton, protesting his innocence, still refused to plead guilty and indicated that he no longer desired the services of his retained counsel. The attorney immediately requested permission of the court to withdraw from the case. However, before allowing counsel to withdraw, the court informed Patton that his case would go to trial that same day. Patton then informed the court that he desired to employ an attorney by the name of McElwee to represent him, whereupon the court permitted counsel to withdraw and caused Mr. McElwee to be called by telephone. A member of McElwee's firm, Max Ferree, appeared and, after talking with Patton, declined to represent him.[1]

The trial court thereupon proceeded to empanel a jury to try Patton on the charge of armed robbery. Upon being asked by the court whether Patton wanted to excuse any of the jurors who had been called, Patton replied, "No, sir, they are acceptable, but I would still like to have a lawyer." Patton's request for counsel was denied and he was tried and convicted without being represented by counsel. He was sentenced to a prison term of not less than ten nor more than fifteen years.

Patton alleged in his petition filed in the District Court that he had exhausted his state remedies and the District Court found that state remedies had, in fact, been exhausted. Patton had filed a petition for habeas corpus in the Superior Court of Caldwell County where he was given a hearing after counsel was appointed by the court to represent him. That court determined the relevant historical facts and held that Patton's constitutional rights had not been violated. The District Court accepted the state court's findings of undisputed historical facts [2] and concluded that, under the circumstances, the trial court was under no duty to appoint counsel for the accused when Patton "brought about the situation by his own action" in dismissing his own counsel after being warned by the judge that the case would proceed to trial that same day.

In Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), the Supreme Court held that the concept of due process embodied in the Fourteenth Amendment does not obligate the states to furnish defense counsel in *every* criminal case and that the test is whether, by an appraisement of the totality of the facts in a given case, there was a denial

1. Although the court did not expressly so find, it appears from an uncontroverted affidavit of Mr. Ferree, filed in the initial habeas corpus proceeding in the Superior Court of Caldwell County and a part of the record on this appeal, that Ferree refused representation because Patton was unable to pay for his services.

2. See Brown v. Allen, 344 U.S. 443, 73 S. Ct. 397, 97 L.Ed. 469 (1953). See also

Davis v. State of North Carolina, 310 F. 2d 904 (4th Cir. 1962), where this court stated at page 907, " * * * the federal judge may rely upon the state record where the historical facts are not in dispute, or, if there is a dispute, where the State court has resolved the factual conflict."

of fundamental fairness, shocking to the universal sense of justice. More recently in Chewning v. Cunningham, 368 U.S. 443 (1962), at page 446, 82 S.Ct. 498 at page 500, 7 L.Ed.2d 442, the Supreme Court said: "It is 'the nature of the charge' (Tomkins v. Missouri, 323 U.S. 485, 488 [65 S.Ct. 370, 89 L.Ed. 407]) that underlines the need for counsel." In Chewning, the Court held that in a trial under Virginia's recidivist statute, the potential issues were so complex and the potential prejudice from a lack of counsel was, therefore, so great that the failure of the state court, upon request, to appoint counsel rendered the judgment of conviction and sentence void under the Due Process Clause of the Fourteenth Amendment.

In Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), the Court reached the same conclusion as in Chewning where the defendant had been convicted in a Florida state court of the charges of incest and of assault in a lewd, lascivious and indecent manner upon a female child under the age of fourteen. Although there was no specific request for counsel in the Carnley case, the Court there held that the case was "one in which the assistance of counsel, unless intelligently and understandingly waived by him [the defendant], was a right guaranteed him by the Fourteenth Amendment." Pages 512 and 513, 82 S.Ct. page 888.

The offense of burglary has been held by the Supreme Court to be so serious and complex as to entitle the accused to representation by counsel under the Fourteenth Amendment.[3] This court has had occasion to consider the claim of violation of an accused's constitutional right to counsel and has held that charges substantially the same as in the case at bar were such as to entitle the defendant to assistance of counsel. In Hobbs v. Pepersack, 301 F.2d 875 (4th Cir. 1962), in which the offense charged was rob-

bery with a deadly weapon, this court said, at page 877:

"It was the Court's holding [in Chewning v. Cunningham, 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442 (1962)] that, in the absence of knowing waiver, the state was obligated under the Fourteenth Amendment to appoint counsel to defend the accused since the 'nature of the charge' was 'too intricate for a layman to master.' * * * The present case falls squarely within the rationale of Chewning."

In Turner v. Maryland, 303 F.2d 507 (4th Cir. 1962), the defendant was charged with attempted armed robbery. There the trial court had appointed counsel for the defendant and the complaint was that counsel had failed in his duty to render effective assistance. The court said at page 511:

" * * * In Hobbs v. Pepersack, 301 F.2d 875 (4th Cir. 1962), we had occasion to consider the right to the assistance of counsel, and concluded, in line with Chewning v. Cunningham, 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442 (1962), and other authorities there cited, that it was fundamentally unfair for Maryland to deny an accused the assistance of counsel at his trial on legally complex charges of robbery with a deadly weapon. The charge Turner faced is substantially the same as that with which Hobbs was confronted, and Turner, like Hobbs, was constitutionally entitled to court-appointed counsel, as the trial court recognized by making an appointment. There must, however, have been a genuine and effective representation."

What the State of North Carolina appears to urge here, and what the District Court seems to have held, is that Patton, by dismissing his employed counsel on the day of the trial after having been told that his trial would com-

---

**3.** Cash v. Culver, 358 U.S. 633, 79 S.Ct. 432, 3 L.Ed.2d 557 (1959); Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945); House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739 (1945).

mence that day, with or without counsel, effectively waived his constitutional right to counsel. With this reasoning we do not agree. In Johnson v. Zerbst, 304 U.S. 458, at page 464, 58 S.Ct. 1019, at page 1023, 82 L.Ed. 1461 (1938), the Court, in holding that the right to counsel had not been waived, stated:

" * * * It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' " [4]

In any normal sense, waiver "connotes some kind of voluntary knowing relinquishment of a right." Green v. United States, 355 U.S. 184, 191, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957). Furthermore, even where the defendant purports to waive right to counsel and even though disclaimer of desire for counsel is expressly and unequivocally made, if the defendant shows that such disclaimer was not made intelligently and understandingly, or that it was made as the result of any coercion, such disclaimer will not be given effect as a waiver of the constitutional right to counsel. Moore v. Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed. 2d 167 (1957).

█ It is clear that an effective waiver of counsel cannot be implied. In Carnley v. Cochran,[5] supra, the Court declared, at page 516:

" * * * The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." [6]

If this does not adequately answer any claim that Patton waived his constitutional right to the assistance of counsel, his final statement before being put to trial, "but I still would like to have a lawyer," is convincing. In the instant case, Patton had not been contacted by his attorney in the interval between his court appearance to answer to the first indictment and his appearance on the day of his trial. He had good reason to believe that his employed attorney had not made the proper preparation to represent him at his trial and, due to their disagreement as to the course to be pursued, dismissed counsel. He then attempted to procure the services of other counsel. This effort, which was made with full knowledge of the trial court, was unsuccessful but it served to emphasize Patton's desire for and realization of the need of the assistance of counsel. We conclude that Patton could not reasonably be held to have intelligently and understandingly waived a constitutional right which he, at the very moment of being put to trial, continued to assert.[7]

In the instant case it is notable that the trial had never been delayed by Patton. The court having once continued the proceedings, not for the benefit of Patton but to allow the state to obtain an indictment against him charging a more serious offense, insisted that the trial proceed on the more serious charge of armed robbery without delay and in disregard of a fundamental constitutional right. We are of the opinion that, under such circumstances, the convenience of the court, the jury, the prosecutor or the witnesses for the prosecution should not be deemed a consideration of sufficient importance to override the preservation of the constitutional right of the accused.

4. See also Emspak v. United States, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997 (1955); Griffith v. Rhay, 282 F.2d 711, (9th Cir. 1960), cert. denied, 364 U.S. 941, 81 S.Ct. 460, 5 L.Ed.2d 373 (1961).

5. 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

6. See also Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945).

7. See Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), where the Court said, in footnote 10 at page 516, that an allegation of a request for counsel is, obviously, tantamount to a denial of waiver. Cf. Arellanes v. United States, 302 F.2d 603 (9th Cir. 1962), where the circumstances were substantially different.

Patton was entitled to court-appointed counsel even though the trial on the new indictment might have been delayed to permit counsel to investigate and prepare for trial. The District Court should afford the State of North Carolina a reasonable opportunity to retry the prisoner. In default of this, the District Court should order his release. To that end, the case will be remanded for further proceedings consistent with the views herein expressed.

Reversed and remanded.

CRAVEN, District Judge (dissenting).

Ordinarily, the granting of a continuance is within the sound discretion of the court. Patiently exercising that discretion, the trial judge was, in my opinion, unusually painstaking in his efforts to protect and implement defendant's right to counsel. That his carefully considered decision to proceed with the trial is now held to have resulted in an unconstitutional denial of the right to counsel astounds me, and I respectfully dissent.