2009 ND 125

**CITY OF GRAND FORKS,**
Plaintiff and Appellee

v.

**Ryan Ray CORMAN, Defendant
and Appellant.**

**No. 20080289.**

Supreme Court of North Dakota.

July 9, 2009.

Kristen Sue Pettit, City Prosecutor, Grand Forks, N.D., for plaintiff and appellee.

Henry H. Howe, Howe & Seaworth, Grand Forks, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Ryan Corman appeals a district court judgment following a jury verdict finding him guilty of driving under suspension, arguing he was denied his constitutional right to counsel. We affirm.

I

[¶ 2] In February 2008, Corman was cited for driving under suspension in violation of Grand Forks City Code ("G.F.C.C.") § 8–0201, a class B misdemeanor. This was an alcohol-related suspension, which calls for a minimum, mandatory four-day jail sentence. G.F.C.C. § 8–1503(1); N.D.C.C. § 39–06–42(2).

[¶ 3] Corman appeared in municipal court, pleading not guilty. In March 2008, he timely requested his case be transferred to district court under N.D.C.C. § 40–18–15.1. He appeared in district court in April 2008, pleading not guilty. At that hearing, Corman was advised of his rights and provided with a copy of the information. Asked whether he would be representing himself at trial, he said he would like a court-appointed lawyer because he could not afford to hire one. He told the district court that the municipal court denied his request for court-appointed counsel. The district court advised Corman that he would have to "reapply with the City" because his was a case transferred from municipal court.

[¶ 4] In May 2008, Corman told the district court he had gone back to the municipal court to apply for a court-ap-

pointed counsel but was told he should sell his car and apply in the district court. The district court told him he would need to submit another application and the court would have to look at the guidelines and his tax returns for 2007; the judge told him that if he made more than $12,000, "you are not going to qualify with us either." In July 2008, at the continued pretrial conference, Corman was again encouraged to apply for a court-appointed counsel in the municipal court. Corman told the judge he was sent to the district court to apply because he was incarcerated (in an unrelated matter). Corman filed his request for court-appointed counsel in district court in September 2008. The district court denied his request on the basis that he must apply to municipal court.

[¶ 5] At the final pretrial conference, three days before the jury trial, Corman said he was representing himself and wanted to proceed with the jury trial. The judge advised Corman that he would have to be familiar with the Rules of Evidence and the Rules of Criminal Procedure and that the court could not assist him with those matters. The judge asked Corman whether he would be able to do that, to which he responded that he thought it was a "fairly straight forward matter" and nothing too difficult. The case was tried to a jury in October 2008, and the jury found Corman guilty of the offense. Corman was sentenced to ten days in jail with six days suspended for one year on the condition there be no further criminal violations. His sentence included one year of unsupervised probation, a $125 statutory court administration fee, a $100 defense/facility administration fee, and a fine of $175.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06 and 40–18–15.1. The appeal was timely under N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–06.

II

[¶ 7] Corman contends his conviction should be reversed because he was denied his right to counsel as guaranteed by the Sixth Amendment of the United States Constitution; article I, section 12 of the North Dakota Constitution; and N.D.R.Crim.P. 44; and because he did not waive his right to counsel.

A

[¶ 8] "A criminal defendant's right to counsel is guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 12 of the North Dakota Constitution." *City of Fargo v. Rockwell*, 1999 ND 125, ¶ 7, 597 N.W.2d 406. The right to court-appointed counsel is, however, "neither ... absolute, [nor] 'free.'" *State v. DuPaul*, 527 N.W.2d 238, 240–41 (N.D.1995). Under N.D.R.Crim.P. 44(a), an indigent defendant is entitled to court-appointed counsel in all felony and misdemeanor cases if the potential punishment includes imprisonment. This is a limited right, requiring the defendant to establish indigency and thus entitlement to appointment of counsel. *State v. Hilgers*, 2004 ND 160, ¶ 7, 685 N.W.2d 109 (citation omitted). "There is no legal reason to appoint counsel for someone who can afford and obtain his own." *DuPaul*, 527 N.W.2d at 241. "The standard of review on an alleged denial of the constitutional right to counsel is de novo." *City of Fargo v. Habiger*, 2004 ND 127, ¶ 18, 682 N.W.2d 300. We review a district court's denial of request for appointed counsel under an abuse of discretion standard, inquiring whether the court "acted arbitrarily, unconscionably, or unreasonably." *DuPaul*, 527 N.W.2d at 240.

[¶ 9] In a case transferred from municipal court to district court, the "city shall provide ... in the case of any indigent defendant, a defense attorney." N.D.C.C. § 40–18–15.1. Therefore, the municipal court retained the authority to either grant or deny Corman's request for court-appointed counsel. Although the municipal court's orders denying Corman's request are missing from the record and should have been included in it, on the basis of the record, we conclude Corman has not shown he was entitled to court-appointed counsel.

[¶ 10] The record contains Corman's request for court-appointed counsel filed in the district court on September 17, 2008. Although the district court denied that request on a different ground, the district court correctly informed Corman earlier that if he earned more than $12,000 annually, he would not likely qualify for indigent defense services. According to the North Dakota Indigent Defense Procedures and Guidelines, the maximum annual gross income for an individual with no dependents to be automatically eligible is established at $12,753. Comm'n on Legal Counsel for Indigents, *Guidelines to Determine Eligibility for Indigent Defense Services,* app. D (2007), http://www.nd.gov/indigents/docs/guidelinesAppendices.pdf. On the basis of Corman's submitted documents reflecting a monthly income of $1,600 and no dependents, his annual income—calculated either on the basis of his monthly income of $1,600 or his reported hourly income of $10—totals $19,200 or more. This exceeds the level at which automatic eligibility for indigent defense services should be considered by at least $6,447. Similar to the defendant in *State v. DuPaul,* 527 N.W.2d 238, 242 (N.D. 1995), without adequate proof of indigency, Corman was not entitled to a court-appointed counsel "even if [he] truly believed

he was too poor to hire his own lawyer." Corman has not shown he would have been entitled to a court-appointed defense counsel, and his argument that he was deprived of his fundamental right to court-appointed counsel must therefore fail. Further, the district court did not abuse its discretion in denying Corman's request for court-appointed counsel on the basis that he must apply in the municipal court, because the district court was not authorized to grant such a request in light of N.D.C.C. § 40–18–15.1.

B

[¶ 11] A criminal defendant who is not indigent has the right to be represented by counsel that the defendant has secured. 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.1(a), at 566 (3d ed.2007). This constitutional protection was a rejection of the English practice which denied criminal defendants the right to be represented by counsel in certain cases. 3 Nancy Hollander et al., *Wharton's Criminal Procedure* § 15:2, at 15–4 (14th ed. 2008).

[¶ 12] This right to be represented by counsel may be waived or forfeited, but first the district court must inform the defendant of the right and afford a reasonable opportunity for the defendant to secure counsel. LaFave, § 11.3(c), at 691–92. The failure of a defendant to secure counsel after being advised of the right and after being given reasonable opportunity has been characterized as a constructive waiver by some courts, *e.g., Nation v. State,* 445 N.E.2d 565, 569 (Ind.1983), and as a forfeiture by other courts. *E.g., Fischetti v. Johnson,* 384 F.3d 140, 146 (3d Cir.2004). The nature and extent of the advice given the defendant depends on the stage of the proceeding. *See Iowa v. Tovar,* 541 U.S. 77, 91, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) (holding the same de-

tailed warnings required when a defendant seeks to represent himself at trial are not required when a defendant seeks to waive counsel at a plea hearing).

[¶ 13] A defendant need not have the skill and experience of a lawyer to make an intelligent choice of self-representation, but the district court should inform the defendant of the dangers and disadvantages of proceeding without a lawyer "so the record establishes the choice is made with eyes open." *State v. Dvorak,* 2000 ND 6, ¶ 10, 604 N.W.2d 445 (citing *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). There is, however, no requirement that the record show an unequivocal statement indicating a defendant's desire to proceed without a lawyer. *Dvorak,* at ¶ 13.

[¶ 14] The record reflects the district court advised Corman of his right to be represented by counsel and recommended against self-representation. The record reflects Corman waived his right to counsel. Although his request for court-appointed counsel had been denied twice in the municipal court for failure to establish indigency—which can be inferred from the record—the record does not reflect any attempts Corman made to secure counsel on his own other than his statement that he had talked to a few attorneys who asked for $1000 to represent him. There is no information about Corman's trying to reach an installment agreement or anything similar that would have facilitated his retaining his own lawyer; instead, the record reflects that when Corman was finally faced with the choice of representing himself or hiring his own lawyer, he voluntarily chose to represent himself.

[¶ 15] We conclude Corman knowingly and intelligently waived his right to counsel when he decided to represent himself. Although the trial judge does not have to engage in a "specific colloquy about the dangers and disadvantages of self-representation," it must be clear from the record "that the defendant knew what he was doing." *City of Fargo v. Rockwell,* 1999 ND 125, ¶ 15, 597 N.W.2d 406 (citation omitted). The record shows that the district court advised Corman prior to trial of the dangers and disadvantages of self-representation and that Corman informed the court he was ready to proceed with the trial. As in *State v. Schneeweiss,* 2001 ND 120, ¶ 31, 630 N.W.2d 482, the district court informed Corman that he would have to be familiar with the Rules of Criminal Procedure and Rules of Evidence and that the court would not be able to assist him with that. When asked whether he would be able to do that, Corman stated, "I suspect it's a fairly straight forward matter. I'm not thinking it's too difficult.... [The City] is going to have the officer tell his story. I'm going to tell my story. I don't see that there is any problem. I don't have any evidence just some testimony." On the basis of the record, we believe Corman knew what he was doing.

### III

[¶ 16] We hold that Corman was not denied his right to counsel and that he voluntarily, knowingly, and intelligently waived his right to counsel. We affirm the judgment of conviction.

[¶ 17] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.